*E-Filed 4/1/14*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JESSE DAVIS,

    Petitioner,

    v.

B. GOWER, Warden,

    Respondent.

No. C 12-2221 RS (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner seeks federal habeas relief from his state convictions. For the reasons set forth below, the petition for such relief is DENIED.

## BACKGROUND

In 2009, an Alameda County Superior Court jury found petitioner guilty of second degree murder, for which he received a sentence of 16 years-to-life in state prison. He was denied relief on state judicial review.[1] This federal habeas petition followed.

Evidence presented at trial showed that in 1990 petitioner beat and stabbed to death an adult female, Janet Harp, in her apartment.[2] Such evidence includes the presence of semen

---

[1] The state appellate court did modify the judgment to give petitioner additional sentencing credits, pursuant to the parties' stipulation. (Ans., Ex. G at 38.)

[2] Petitioner once believed that Harp was his daughter (a belief disproved by DNA testing) and had had a sexual relationship with her since she was "about 14, 15 years old." (Ans. at 1, 8.)

1  bearing his DNA profile in her corpse; testimony regarding her 60 physical injuries
2  (including stab wounds to her lung and groin, blunt injuries, fractured upper and lower jaws,
3  cheekbone, and nose); and his admission to police that he had had sex with, and beaten and
4  tied up, Harp: "My temper gets the best of me."[3]  (Ans., Ex. G (State Appellate Opinion) at
5  4, 5, 7–8; Ex. C (People's Exhibit 23B) at 15.)  He also told police that she was alive when
6  he left, and that he did not recall using a knife. (*Id.*, Ex. C at 8, 11, 14.)  As grounds for
7  federal habeas relief, petitioner claims the trial court violated his right to due process by
8  (1) refusing to admit certain evidence; and (2) concluding that his confession was voluntary,
9  and in consequence denying his motion to suppress.

## STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's

---

[3] Though Harp died in 1990, petitioner was not a serious suspect until 2005 when his DNA profile was matched to that of the semen found at the crime scene. (Ans., Ex. G at 5.)

decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

## DISCUSSION

Petitioner claims that the trial court violated his right to due process by denying his motion to suppress his confession. More specifically, the trial court (I) unconstitutionally denied the admission of evidence, and (II) erred in its determination that the confession comported with constitutional requirements.

The state appellate court summarized the circumstances of the interrogation as follows: Sergeant Longmire, later the lead homicide investigator in Harp's case, interrogated petitioner on behalf of the Oakland Police Department, decided, pursuant to police policy, that some portions of the interview would be recorded by audiotape, and others would not. Those untaped segments were memorialized by contemporaneous handwritten notes taken by Longmire. (Ans., Ex. G at 5–6.) During the initial phase of the interview, petitioner stated that he had not seen Harp since a week before her death and denied being sexually involved with her. (*Id.* at 6.) Based on the presence of petitioner's semen found in Harp's vagina, Longmire knew petitioner was not being entirely truthful. Petitioner was given a break of over two hours wherein he was left alone in the interview room. (*Id.* at 6–7.) Three times during this period petitioner asked to go to the bathroom and was escorted to the public restroom by two officers, twice by Longmire. According to petitioner, Longmire told petitioner during one trip to the bathroom that police knew that he was guilty, but that Longmire could get petitioner released with just an ankle monitor if he told the truth. (*Id.* at 10.) Petitioner further contends that Longmire assured him that he was too old to get the

No. C 12-2221 RS (PR)
3     ORDER DENYING PETITION

death penalty. (*Id.*) When the interview resumed, petitioner admitted that on the day of Harp's death he hit her with his fist, a lamp and pot, used two ropes[4] from either the curtains or the closet to tie her up, and left her bound and alone in her apartment. (*Id.* at 7; Ex. C at 3–4, 7–8, 15–16.) Finally, petitioner acknowledged that Longmire had been fair to him during the interrogation and nothing less than professional. (*Id.*, Ex. G at 8.)

## I. Denial of the Admission of Evidence

Before trial, petitioner moved to suppress his statements to police, asserting that they were made involuntarily. In support of his motion to suppress, petitioner moved to admit the testimony of seven persons Longmire had interrogated in cases unrelated to petitioner's, who would testify that he had used threats or promises to secure admissions from them. (Ans., Ex. G at 10–11.)[5]

(1) Joel Gay would testify that Sergeant Longmire threatened that he would not see his five year old daughter until she graduated high school if he did not implicate his friend in the shooting of an Oakland police officer. (*Id.* at 13.) (2) Twynisha Ashley would testify that Longmire threatened to take her children away from her if she did not say that a certain suspect had committed murder. (*Id.* at 14.) (3) Amber Burrell, a witness in the same case as Ashley, would testify that Longmire interviewed her off tape for several hours wherein he threatened to arrest her and, alternatively, promised to help her collect a $75,000 reward and set her family up in the three bedroom apartment if she gave a false statement implicating an acquaintance in the murder. (*Id.* at 15.) (4) If called to testify, Vincent Clark, also a witness in the same case as Ashley, would describe how Longmire promised to drop pending charges, and help Clark collect a cash reward and relocate if he testified to another's involvement in a crime. (*Id.*) (5) Jermaine Givens would testify that Longmire kept him in

---

[4] The autopsy report states that Harp was bound with electrical cords. (Ans., Ex. G at 4.)

[5] "Longmire acknowledged that, at the time of trial, he was on paid administrative leave because of his actions in an unrelated case, and the Oakland Police Department was attempting to terminate his employment for misconduct." (Ans., Ex. G at 5.)

an interview room for 12 hours without food or water, refused him access to counsel and would not treat Givens's migraine headache until he confessed to murder. (*Id.* at 15–16.) (6) Debaughndre Broussard and (7) Yusef Bey would introduce evidence consistent with "media accounts" claiming that Longmire left Bey alone with Broussard in the interview room for ten minutes and then obtained a taped confession from Broussard confessing to a murder and exonerating Bey. (*Id.* at 16.) Defense counsel admitted that he had not spoken to Broussard or Bey, and that he had no witness statements from them. (Ans., Ex. D (Appellant's Opening Brief) at 13–19; Ex. G at 16.)

      At the suppression hearing, the trial court allowed petitioner to present evidence from Joel Gay. It excluded the remaining evidence because it lacked probative value, and its presentation would be an undue consumption of time. (Ans., Ex. B (Reporter's Transcript), Vol. 1 at 63–64.) The trial court rejected petitioner's argument that the testimony established a common plan as to Longmire's approach to interrogations finding that "it doesn't even seem to be a total plan because they're different in each situation." (*Id.*, Ex. G at 27.) Moreover, it found that the evidence would be "confusing to the jury." At trial, all the evidence, including Gay's testimony, was excluded. (*Id.*, Vol. 3 at 293.)

      The state appellate court concluded that the trial court properly excluded the evidence at the suppression hearing and at the trial. As to the suppression hearing, the appellate court found that petitioner's "offers of proof did not indicate repeated instances of similar conduct that were sufficiently regular or consistent to constitute habit," and so were inadmissible as habit or custom evidence. (Ans. Ex. G at 19.) As to the petitioner's contention that the evidence established a "plan," the court found that "[t]here is no evidence of any overarching 'plan' on Longmire's part, but merely a handful of particularized responses to a few individuals." (*Id.* at 21.) Finally, the court held that the prejudicial nature of the evidence greatly outweighed its probative value and so it was properly excluded as "the evidence of what might have happened in *other* cases became entirely irrelevant to *this* case." (*Id.* at 23–24.) Turning to the exclusion of evidence at trial, the state appellate court found that:

> For the same reasons that defense counsel's offers of proof did not demonstrate the proffered testimony of the witnesses would be admissible as habit evidence or evidence of a plan for purposes of the suppression hearing, his offers of proof did not demonstrate that the proffered testimony of the six witnesses and Gay would be admissible at trial. Simply put, the incidents of Longmire's purported conduct in the other cases were too infrequent and dissimilar.

(*Id.* at 28.)

"Well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina,* 547 U.S. 319, 324 (2006). This latitude is limited, however, by a defendant's constitutional rights to due process and to present a defense, rights originating in the Sixth and Fourteenth Amendments. *Id.* In deciding if the exclusion of evidence violates the due process right to present a fair defense, the court balances the following five factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense. *Chia v. Cambra*, 360 F.3d 997, 1004 (9th Cir. 1985).

Habeas relief is not warranted here. The state appellate court reasonably determined that the evidence lacked sufficient probative value and was unreliable.[6] First, the Broussard and Bey evidence lacked any reliability because, as counsel admitted, he had not spoken to either of them and did not have witness statements from them. Second, the state appellate court reasonably determined that the evidence from the other excluded witnesses lacked any reasonable similarity to petitioner's interrogation. These other alleged incidents involved lavish promises (e.g., $75,000 reward), requests to lie, and severe threats (e.g., the loss of custody of children). These instances are entirely unlike Longmire's alleged behavior during petitioner's interrogation. He allegedly promised petitioner that he would receive only an

---

[6] Even if the other *Chia* factors weighed in favor of petitioner, the lack of probative value and reliability are dispositive.

ankle bracelet tracker if he confessed, and encouraged him to tell the truth.[7] Not only was Longmire's alleged behavior in these other unrelated interrogations different in kind, such promises and threats were made at different times to different persons under different, unrelated circumstances. They do not show how Longmire acted during *petitioner's* interrogation. Furthermore, it was reasonable to conclude that the presentation of six witnesses — none of whom had knowledge of the crimes petitioner was charged with committing — would be an undue consumption of time. On such a record, the state appellate court's affirmation of the trial court's determination was reasonable, and is entitled to AEDPA deference.[8] This same reasoning and deference applies equally to petitioner's claim regarding the suppression of the same evidence (including Gay's testimony, which was admitted at the suppression hearing) at trial. Accordingly, these claims are DENIED.

## II.     Voluntariness of Confession

Petitioner claims that the trial court violated his constitutional rights when it determined that his confession was voluntary, and by denying his motion to suppress. He claims that he confessed only because of Longmire's promises and threats. The trial court denied the motion to suppress. It found credible Longmire's testimonial assertions that petitioner's version of the interrogation was incorrect, and that no coercive activity occurred. (Ans., Ex. B, Vol. 3 at 302–03.) The state appellate court agreed, and found that petitioner's testimony was not credible. It was "confusing, if not inconsistent, in several respects," including whether or not Longmire told him what to say or merely encouraged him to confess, and whether petitioner denies what he said was true or merely disputes its voluntariness. (Ans., Ex. G at 12.)

---

[7] According to petitioner, when the tape was off, Longmire called him a "'motherfucker,' said that he had liked to petitioner, and stated 'I got you now.'" (Pet. at 17.)

[8] Whether the trial court was correct in its ruling on state law — that is, that such evidence showed neither habit or plan or custom — is of no matter on federal habeas review. This Court is bound by the state appellate court's determination that the trial court's ruling was correct under state law. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

1    Involuntary confessions in state criminal cases are inadmissible under the Fourteenth
2    Amendment. *Blackburn v. Alabama*, 361 U.S. 199, 207 (1960). A federal habeas court must
3    review *de novo* a state court's finding that a confession was voluntarily given. *Derrick v.*
4    *Peterson*, 924 F.2d 813, 817 (9th Cir. 1990). A state court's subsidiary factual conclusions,
5    however, are entitled the presumption of correctness. *Rupe v. Wood*, 93 F.3d 1434, 1444 (9th
6    Cir. 1996). Not only must federal habeas courts accord credibility determinations deference,
7    *see Knaubert v. Goldsmith*, 791 F.2d 722, 727 (9th Cir. 1986), factual determinations such as
8    credibility are, under 28 U.S.C. § 2254(e)(1), "presumed to be correct."

9    "[C]oercive police activity is a necessary predicate to the finding that a confession is
10   not 'voluntary' within the meaning of the Due Process Clause." *Colorado v. Connelly*, 479
11   U.S. 157, 167 (1986). The interrogation techniques of the officer must be "the kind of
12   misbehavior that so shocks the sensibilities of civilized society as to warrant a federal
13   intrusion into the criminal processes of the States." *Moran v. Burbine*, 475 U.S. 412, 433-
14   434 (1986). The pivotal question in cases involving psychological coercion "is whether [,in
15   light of the totality of the circumstances,] the defendant's will was overborne when the
16   defendant confessed." *United States v. Miller*, 984 F.2d 1028, 1031 (9th Cir. 1993).

17   Habeas relief is not warranted here. This Court must defer to the state court's
18   credibility determination that Sergeant Longmire's recollection of the events, and not
19   petitioner's, was accurate. With such deference, petitioner's claim cannot survive.
20   Furthermore, the totality of the circumstances indicate that petitioner's confession was
21   voluntary, and not coerced. As the state appellate court declared, "[Petitioner] was not
22   overborne by any promise or threat Longmire supposedly made, since [petitioner] did not say
23   the very thing Longmire purportedly wanted him to say [that is, that he murdered Harp]."
24   (Ans., Ex. G at 24.) In fact, his incriminating statements "were not things that Longmire
25   instructed him to say." (*Id.*) Also, even if Sergeant Longmire encouraged petitioner to
26   confess or tell the truth off the record, such behavior does not rise to the level of coercive
27   police activity. Furthermore, given that petitioner previously served a six-month sentence in

jail for injuring his son, the court stated that it would be unreasonable for him to believe that he might only have to wear an ankle bracelet in exchange for confessing to murder.  Finally, even if petitioner's claims regarding Longmire's statements to him in the bathroom are correct, such actions are not of "the kind of misbehavior that so shocks the sensibilities of civilized society as to warrant a federal intrusion into the criminal processes of the States." *Moran*, 475 U.S. at 433–34.  The state appellate court's determination was reasonable and is entitled to AEDPA deference.  Accordingly, the claim is DENIED.

## CONCLUSION

The state court's adjudication of the claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Accordingly, the petition is DENIED.

A certificate of appealability will not issue.  Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Petitioner may seek a certificate of appealability from the Ninth Circuit.  The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED**.

DATED: April 1, 2014

                RICHARD SEEBORG
                United States District Judge